IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BONITA HUNT, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:09-CV-3137-AT |
| v. | : | |
| | : | |
| LaRUTH HOLLOWAY, in her individual capacity; SABRA LEBLANC, in her individual capacity; GEOFFREY PARKER, in his individual capacity; JIM BALINGER, in his individual capacity; and MICHAEL TIMMS, in his individual capacity, | : : : : : : : : | |
| | : | |
| Defendants. | : | |

# **O R D E R**

This matter is before the Court on Defendants' motion to dismiss Plaintiff's complaint, [Doc. 109], and several motions that Plaintiff Bonita Hunt filed seeking reconsideration and other relief.  As explained below, the Court **GRANTS** Defendants' motion to dismiss Plaintiff Hunt's complaint, [Doc. 109], and **DENIES** the remaining motions, [Docs. 112-13, 117-21].

### **I.    STANDARD FOR MOTION TO DISMISS**

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A pleading fails to state a claim if

it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S.\_\_\_\_, 129 S.Ct. 1937, 1949 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitlement' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).[1]

---

[1] Because Ms. Hunt is proceeding pro se, the Court must liberally construe the allegations in the complaint to determine if the complaint states any plausible claim for relief. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed.") (internal quotation marks omitted). Due to the length of this case and the plethora of filings, the Court has reviewed the entire record in analyzing Defendants' motion to dismiss to determine whether any facts exist in the record to support a finding that Ms. Hunt has stated a plausible claim for relief. *See generally* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2011) (observing that in ruling on a motion to dismiss, a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record in the case"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss").

## II.     PROCEDURAL POSTURE

On October 20, 2009, Ms. Hunt filed this lawsuit against DCA, alleging as amended claims under the Fair Housing Act, Title VII of the Americans with Disabilities Act of 1990, and Section 504 of the Rehabilitation Act of 1973. (Doc. 52 at 5; Doc. 79.) On December 23, 2010, the predecessor judge in this matter granted DCA's motion to dismiss this case, finding that the statute of limitations barred Ms. Hunt's Americans with Disabilities Act and Rehabilitation Act claims. (Doc. 52 at 7-8.) The Eleventh Amendment barred Ms. Hunt's Fair Housing Act claim against DCA. (*Id.* at 6-7.) In allowing Ms. Hunt to amend her complaint a final time, the predecessor judge in this case instructed Ms. Hunt that she could re-file as amended only her Fair Housing Act claim against DCA staff who acted in their individual capacities. (*Id.* at 8-9.)

On January 18, 2011, Ms. Hunt appealed the rulings the Court made against Ms. Hunt in its December 23, 2010, order. (Doc. 76.) On January 28, 2011, Ms. Hunt filed an amended complaint alleging Fair Housing Act, due process, and First Amendment claims against DCA staff acting in their individual capacities. (Doc. 79.) On September 14, 2011, the Eleventh Circuit dismissed Ms. Hunt's appeal for lack of jurisdiction on appeal because this Court had granted Ms. Hunt an opportunity to amend her complaint, and Ms. Hunt had in fact amended her complaint, making the December 23, 2010, order not a final order for appellate purposes. (Doc. 108 at 2-5.) Proceeding on Ms. Hunt's amended complaint filed January 28, 2011, (Doc. 79), the individual DCA Defendants have

filed a motion to dismiss Ms. Hunt's renewed and amended claims.  (Doc. 109.) Ms. Hunt has filed a number of ancillary motions the Court addresses after the Defendants' motion to dismiss.

### III.  BACKGROUND

In December 2004, Bonita Hunt began renting a home for her family from a private landlord in Fayetteville, Georgia at 275 White Oak Way.  (Doc. 9 at 4; Doc. 11 at 10.)  While living at the 275 White Oak Way home, Ms. Hunt received a federal housing subsidy that the Georgia Department of Community Affairs ("DCA") administered.  (Doc. 9 at 4.)  The home at 275 White Oak Way had severe mold, decaying wood, a decaying foundation, was infested with rats, and smelled of raw sewage.  (Doc. 9 at 4; Doc. 44-4 at 7; Doc. 79 ¶10.)  Ms. Hunt notified the landlord and DCA of the substandard housing conditions at 275 White Oak Way and asked DCA to conduct a special inspection of the home in May 2005 before the agency's regularly scheduled inspection in September 2005. (Doc. 5 at 1; Doc. 44-4 at 7.)  DCA denied or ignored these requests.  (Doc. 5 at 1.) Despite Ms. Hunt's regular complaints, the landlord did not remedy the identified problems at 275 White Oak Way until October 31, 2005.  (Doc. 44-4 at 8.)

Bonita Hunt is a single mother of two children.  Her teenage son is disabled with a number of mental and emotional impairments: attention deficit hyperactivity disorder, anxiety disorder, conduct disorder, and bipolar mania

4

disorder.  (Doc. 44 at 2.)  Ms. Hunt's daughter, who is three years younger than her son, does not suffer from a disability but suffers from chronic upper respiratory problems, allegedly resulting from the health hazards of the family's housing conditions at 275 White Oak Way.  (Doc. 5 at 1.)  Both of the children live with Ms. Hunt full-time.

Beginning in December 2004, when Ms. Hunt moved her family to the DCA authorized and subsidized home at 275 White Oak Way, she requested permission to have a live-in aid to assist her with her disabled son.  (Doc. 11 at 6, 8.)  DCA's policy for reasonable accommodations allowed families with a "member with a disability" to request DCA to approve a live-in aid "to provide supportive services for a member with a disability."  (Doc. 9 at 51.)  Federal housing rules prevent an outside adult from living in the subsidized home unless the family obtains special approval for the additional occupant.  (Doc. 44-4 at 5.)[2]

Due to his disabilities, Ms. Hunt's son required a "highly structured living and educational environment."  (Doc. 44 at 3.)  Ms. Hunt needed the live-in aid to help her transport her son to a school that addressed his disabilities as well as to provide additional supervision and support in the home.  (Doc. 44 at 3-8.)  By February 2006, Ms. Hunt had arranged for a certified nursing assistant, Rhonda Swilling, to serve as her live-in aid, provided that DCA approved.  (Doc. 44-8 at 1.)  Had DCA approved Ms. Hunt's request for a live-in aid, Ms. Swilling would

---

[2] There is no indication that DCA would have been required to finance a live-in aid for Ms. Hunt's family.  The record simply indicates that DCA's own rules and regulations provided a mechanism for the agency to approve an outside adult to live in the federally subsidized home.

5

have been able to transport Ms. Hunt's son to the school most capable of handling his disabilities.  (Doc. 44 at 4.)  DCA repeatedly denied or ignored, however, Ms. Hunt's requests for a live-in aid.  (*Id.*)

In April 2006, Ms. Hunt moved her family to a different DCA approved and subsidized home at 120 Kellen's Court in Fayetteville, Georgia.  (Doc. 9 at 4.)  Ms. Hunt continued to request approval for a live-in aid, submitting medical documentation that Ms. Hunt's son needed constant adult supervision.  (Doc. 9 at 5-6, 83.)  DCA continued to deny Ms. Hunt's requests for a live-in aid, informing Ms. Hunt that only disabled heads-of-household qualified for live-in aids, which was clearly contrary to DCA's written policy allowing live-in aids for any disabled family member.  (Doc. 9 at 6, 51; Doc. 44-4 at 5.)

In May 2007, Ms. Hunt filed a complaint with the United States Department of Housing and Urban Development, alleging that DCA had discriminated against her and her family because of her son's disability.  (Doc. 44-4 at 1.)  Around this same time, in April 2007, DCA accused Ms. Hunt of fraudulently using her housing voucher and gave Ms. Hunt thirty days to repay over $10,000 in benefits.  (Doc. 9 at 9, 30-31; Doc. 11 at 7.)  An administrative law judge denied Ms. Hunt's discrimination claim and also found that Ms. Hunt did not act fraudulently or owe monies to DCA.  (Doc. 9 at 9; Doc. 11 at 7.)  Shortly after the administrative law judge issued his opinion on the matter, DCA informed Ms. Hunt that DCA planned to terminate its relationship with her

landlord and that she had less than thirty days to move to a new home or lose her housing voucher. (Doc. 9 at 9, 43.)

When Ms. Hunt received this letter from DCA in July 2007, her son was experiencing significant difficulties at school. (Doc. 44 at 5-6.) Several professionals advised Ms. Hunt against moving her son at that time because the move might cause him to regress. (*Id.* at 6.) Because Ms. Hunt could not retain her housing voucher without moving to a different home, Ms. Hunt chose to let her housing voucher expire and remain in the same home with the help of a live-in aid, all at her own expense. (*Id.*) The Court notes additional facts below as needed, keeping in mind the standard of review for a pro se motion to dismiss.

### IV. DISCUSSION

#### a. *Fair Housing Act Claim*

The Fair Housing Act prohibits the refusal "to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The Fair Housing Act also prohibits discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap" of the buyer, renter, or occupant. 42 U.S.C. § 3604(f)(1). To prevail on a Fair Housing Act claim, a plaintiff must show that the actor (1) treated the plaintiff differently than other similarly situated persons; (2) created a disparate impact on the plaintiff; or (3) refused to make a reasonable accommodation for

the plaintiff's race, color, religion, sex, familial status, disability, or national origin.  *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216-19 (11th Cir. 2008).

Here, Ms. Hunt has alleged a number of facts that indicate that Defendants subjected Ms. Hunt to deplorable housing conditions at 275 White Oak Way and refused to comply with DCA's stated policy of reasonably considering her family for a live-in aid.  But, Ms. Hunt has not alleged any facts that give rise to a plausible inference that the Defendants treated her or impacted her unfairly because of her race or because of her son's disability.  Ms. Hunt has not pled any facts that indicate that Defendants treated her family less favorably than any other because of race or disability.  Additionally, and perhaps most importantly, Ms. Hunt has not pled any allegations in her amended complaint supporting a finding of individual liability, although this is precisely what the predecessor judge in this matter ordered her to do in amending the complaint.  (Doc. 52 at 9-10.)

Tragic as Ms. Hunt's situation and her family's suffering may be, the Fair Housing Act does not provide relief based on a plaintiff's sheer allegation or conjecture that the complained of behavior was related to race or disability.  *See generally Schwarz*, 544 F.3d at 1216 (observing that plaintiff had "utterly failed to establish that it was treated differently than anyone else"); *Hallmark Developers, Inc. v. Fulton County, Georgia*, 466 F.3d 1276, 1283 (11th Cir. 2006) (observing that to establish Fair Housing Act violation, "a plaintiff must 'establish

8

that race played some role' in the decision"). In the absence of sufficiently pled specific facts that would plausibly give rise to the claim of discrimination, the Court **GRANTS** Defendants' motion to dismiss Ms. Hunt's claims under the Fair Housing Act.

### *b. 42 U.S.C. § 1983 Claim*

Forty-two U.S.C. § 1983 prohibits any person acting under color of law to deprive a citizen of "any rights, privileges, or immunities secured by the Constitution and laws." Ms. Hunt first alleges that Defendants deprived her of procedural due process of law by depriving her of a grievance hearing. (Doc. 79 ¶25.) She also alleges that Defendants deprived her of substantive due process by not approving her request for a live-in aid or to move from 275 White Oak Way while retaining the benefit of her housing voucher. (*Id.* at ¶¶10, 25-26.) Ms. Hunt finally alleges that Defendants retaliated against her in not approving her request for a live-in aid because she exercised her right to speak freely in violation of the First Amendment. (*Id.* at ¶¶22-23.)

Ms. Hunt has indicated in a number of places that she frequently requested approval from Defendants for a live-in aid and for help with the substandard living conditions at 275 White Oak Way. She has never indicated, however, that she requested a grievance or due process hearing with Defendants or that Defendants denied such a request. After receiving a notice that Defendants intended to terminate her housing voucher for alleged fraudulent behavior, Ms.

9

Hunt initiated a complaint against DCA with the Department of Housing and Urban Development. (Doc. 9 at 9, 30-31; Doc. 11 at 7; Doc. 44-4 at 1.) The Department provided Ms. Hunt with a hearing before an administrative law judge that resolved both her complaint against Defendants and their attempt to discontinue her housing voucher. Because Ms. Hunt has not plead factual allegations creating a plausible inference that Defendants denied Ms. Hunt procedural due process, the Court **GRANTS** Defendants' motion to dismiss her 42 U.S.C. § 1983 claim based on procedural due process violations.

Ms. Hunt's substantive due process claim under 42 U.S.C. § 1983 is twofold. First, while at 275 White Oak Way, Ms. Hunt informed Defendants of the abhorrent living conditions and asked them either to conduct a "special inspection" or to allow her to move to a different property—neither of which Defendants did. Second, throughout her relationship with Defendants, Ms. Hunt repeatedly sought approval for a live-in aid in accordance with Defendants' policies regarding live-in aids. Defendants repeatedly ignored or arbitrarily denied her requests.

While, if true, these actions by Defendants are truly disturbing, the Eleventh Circuit has held that substantive due process does not protect administrative deprivations of state-created rights or interests. *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) ("executive, deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted

arbitrarily and irrationally") (internal quotation marks omitted); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) ("areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause"). Because Defendants created the policies relating to the "special inspection" and the live-in aid Ms. Hunt requested and denied them through their administrative authority, the Eleventh Circuit does not recognize the acts Defendants allegedly committed as substantive due process violations. Thus, the Court **GRANTS** Defendants' motion to dismiss Ms. Hunt's 42 U.S.C. § 1983 claim based on substantive due process violations.

Ms. Hunt's last claim is that Defendants retaliated against her by denying her request for a live-in aid because she exercised her right to speak freely. In order to allege a civil rights violation based on the First Amendment's right to speak freely, a plaintiff must allege facts supporting an inference that her speech played a "substantial factor" in the complained of retaliation. *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1296 n.21 (11th Cir. 1998) (citing *Mt. Healthy City School District Bd. Of Educ. V. Doyle*, 429 U.S. 274, 287 (1977) ("the burden was properly placed upon respondent to show . . . that this conduct was a 'substantial factor' or . . . a 'motivating factor' in the Board's decision not to rehire him")). Ms. Hunt has not alleged any facts supporting an inference that Defendants' ignored or denied her requests for a live-in aid because of any

protected speech she made.  Thus, the Court **GRANTS** Defendants' motion to dismiss Ms. Hunt's 42 U.S.C. § 1983 claim based on First Amendment violations.

## V.     CONCLUSION

Based on the foregoing discussion, the Court **GRANTS** Defendants' motion to dismiss Ms. Hunt's complaint.  [Doc. 109.]  In her motions to reconsider the December 23, 2010, order dismissing the Americans with Disabilities Act and Rehabilitation Acts as untimely, [Docs. 112, 113], Ms. Hunt indicates that she renewed her request for a live-in aid in November 2007—less than 2 years from the date she filed the original complaint in this case.  The Court has reviewed the two-year record in this case extensively.  Ms. Hunt has made a number of filings with numerous attachments, briefs, arguments, letters, responses, and positions.  In light of the lengthy time frame that Ms. Hunt has had to plead sufficient facts tying Defendants' actions to race and/or disability discrimination in tandem with her proactive filings, the Court does not find it appropriate to allow any further amendments to Ms. Hunt's complaint.  The Court also finds that there is no basis in the voluminous record to support the assertion of timeliness Ms. Hunt now makes.  Thus, the Court **DENIES** Ms. Hunt's motions to reconsider the December 23, 2010, order.  [Docs. 112, 113.]

The Court **DENIES AS MOOT** all remaining motions in this case. [Docs. 117, 118, 119, 120, 121.] All pending motions and issues having been resolved, the Court **DIRECTS** the Clerk to close this case.

It is so ORDERED this 10th day of February, 2012.

_____
Amy Totenberg
United States District Judge